**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Troy Richard ANDERSON,**
**Defendant–Appellant.**

No. 99–6035.

United States Court of Appeals,
Sixth Circuit.

Aug. 16, 2001.

Before MERRITT, NELSON, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Troy Anderson was convicted by a jury of one count of arson in violation of 18 U.S.C. § 844(i). He was sentenced to 60 months in prison, two years supervised release, and restitution in the amount of $30,971.37. Anderson filed a timely notice of appeal, claiming only that the district court had erred in excluding from evidence a statement contained in the government's appellate brief in an unrelated criminal case against Anderson and in refusing to permit the testimony of the AUSA who had prosecuted that case and filed the brief. We will affirm the judgment of the district court.

I.

Anderson owned a piece of property in Dyersburg, Tennessee, on which were lo-

cated a bar, several rental cabins and Anderson's residence. The bar was heavily damaged by fire on June 30, 1996; two of the cabins located behind the bar burned down on July 7, 1996. Both the bar and the cabins were insured, and the insurance company paid $74,000 to the bank that held the mortgage on the property. Investigation by the authorities confirmed that all three fires were the result of arson.

On October 26, 1996, Anderson met with FBI Agent Lewoczko and two local police officers. At that time, Anderson was under indictment for charges of drug conspiracy and being a felon in possession of a firearm. AUSA Murphy, who was prosecuting that matter, had offered Anderson a plea agreement that included an option for the government to recommend a 50% reduction in sentence if Anderson provided to the government complete information about all of his other criminal activities. *See* U.S.S.G. § 5K1.1. Anderson agreed to the plea bargain, and the purpose of the October meeting was for Anderson to proffer this information to the government. During the meeting–at which Murphy was not present–Anderson admitted that he had asked his wife, Denise Anderson, to ask a man named Steve Barker to burn the bar; that he later learned his wife had actually burned down the bar; that Anderson personally had contacted Barker to burn down the two cabins; and that Barker did burn down the cabins. Finally, Anderson stated that he had the buildings burned so he could collect the insurance money. These statements were memorialized by FBI Agent Lewoczko on the agency's standard form, FBI 302.

By the time Anderson was sentenced on the drug charges, the government had learned that he had failed to provide complete information about his criminal activities. Specifically, he had failed to inform them about his knowledge of and possible involvement in a murder. Further, he had neglected to mention that a few days before the October meeting, he had provided a power of attorney to a third party to assist him in filing the claims with the insurer of the bar and the cabins and that this third party had taken steps toward obtaining those insurance proceeds. Because Anderson had failed to fully disclose the extent of his involvement in criminal activity, the government recommended only a 40% reduction in sentence instead of the full 50% reduction it had originally agreed to recommend.

Anderson appealed the sentence imposed for the drug conviction to this Court. *See United States v. Anderson,* Nos. 97–5965, 98–5185, 1999 WL 220118 (6th Cir. Apr. 7, 1999). In the government's appeal brief in that case, AUSA Murphy made the following statements regarding Anderson's failure to disclose at the proffer meeting all of his information relating to his criminal activities:

> [T]he government had agreed to recommend a departure of fifty percent if, and only if, Anderson disclosed to the government all criminal activity of which he had knowledge. Anderson did not disclose information about a murder of which he had knowledge and may have been a participant in. In addition, he failed to disclose any information concerning a mail fraud scheme that involved several arsons at a commercial property he owned.... Anderson did not fully comply with his agreement with the government in this case, i.e., that he disclose *all* knowledge of criminal activity to the government, so the government did not recommend a departure of fifty percent. If anyone acted in bad faith and disregarded their part of the bargain in this case it was Anderson, not the government. Anderson's assertions otherwise are simply false and not a scintilla of proof supporting them can be

found in the record in this case. In sum, they should be totally disregarded by this Court.

We affirmed Anderson's prison sentence for the drug offenses. *See Anderson,* 1999 WL 220118 at *4.

In 1998, the government initiated the prosecution of Anderson on the arson charges stemming from the fires at the bar and the cabins. As part of its case-in-chief, the government planned to introduce Anderson's admissions to the FBI made during the October, 1996, meeting as evidence of Anderson's guilt on the arson charges. To rebut those admissions, Anderson subpoenaed AUSA Murphy to testify as an impeachment witness, arguing that the government's claim that Anderson had admitted to the FBI that he had arranged the arsons in order to collect the insurance money, and Murphy's statement that Anderson had failed to disclose the mail fraud scheme to the government were inconsistent. Anderson's claim, as we understand it, is that because the mail fraud charge related solely to his efforts to collect the insurance money, if he had in fact made the confession that the FBI 302 Report purported to memorialize, then he had disclosed the mail fraud scheme to the government and Murphy's statement was false; if Murphy's statement was false, then Anderson was entitled to use Murphy's testimony to impeach the government's witnesses who testified to Anderson's confession made at the October 26, 1996, meeting and recorded in the FBI's 302 Report. Rejecting Anderson's arguments, the district court ruled that neither Murphy's testimony nor his statement in the government's appellate brief in the prior prosecution was admissible. Anderson contends that this decision was reversible error, and he now seeks a new trial.

## II.

We review evidentiary decisions of the district court for abuse of discretion. *See United States v. Seago,* 930 F.2d 482 (6th Cir.1991); *United States v. Rios,* 842 F.2d 868 (6th Cir.1988). However, a decision of law–such as whether evidence is hearsay within the meaning of the Federal Rules of Evidence–we review de novo. *See Hancock v. Dodson,* 958 F.2d 1367 (6th Cir. 1992).

■ Anderson argues that AUSA Murphy's statement in the government's brief on appeal of the drug conviction is an admission of a party-opponent, excepted from the hearsay rule, and therefore admissible for impeachment purposes in his arson trial. He contends that Murphy's statement would have tended to cast doubt on the testimony of the FBI agent and local police officers who heard and documented Anderson's confession at the October 26 meeting that he had arranged to have his buildings burned. We need not consider the applicability of the hearsay rule to this case because it is clear to us that the district court, while considering the hearsay nature of the statement, ultimately ruled it inadmissible because its probative value was far outweighed by the prejudice to both parties. *See* FED.R.EVID. 403. The district court stated on the record:

> [I]t is clear that the potential for confusion and the potential for prejudice both to the government and the defendant far outweighs–those two factors far outweigh any probative value tha[t] the admission has.
>
> \*   \*   \*   \*   \*   \*
>
> It has so little to do with whether or not Mr. Anderson was involved in these arsons and is guilty of the offenses with which he is charged here, that it's just a rabbit trail down which we're not going

to run with this jury.... I don't make this ruling without understanding that the confession itself is very important to this case because the government has little if anything else to tie Mr. Anderson to these offenses. But this statement in this brief also has no tendency, has little, if any, tendency to–and I would say probably no tendency to establish that the confessions were not given when all is said and done. And it's just a road we don't need to go down.

■ Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403. When otherwise relevant and admissible evidence would cause unfair prejudice, confuse the issues, or mislead the jury, a district court may properly reject the evidence. *See Sanders v. Freeman,* 221 F.3d 846, 859 (6th Cir.2000).

In this case, the admission of Murphy's appellate brief and his testimony might well have confused the jury. But it almost certainly would have prejudiced Anderson. By introducing this statement. Anderson would have introduced evidence of other crimes attributable to him–specifically, a murder and a drug conspiracy–for which he was not presently on trial, and evidence of which would not have been otherwise admissible against him under the rules of evidence. The impeachment value of the evidence, on the other hand, was at best minimal. During the offer of proof with regard to Anderson's attempt to subpoena AUSA Murphy, Murphy testified that law enforcement agents present at the October 26 meeting had told him that Anderson confessed to having commissioned the burning of the buildings so he could obtain

the insurance money; Murphy further testified that Anderson did not reveal that he had obtained the services of a third party to help him obtain those insurance proceeds. Not only had he executed a power of attorney in favor of this third party, that person submitted claims to the insurance company and, in an effort to obtain the insurance proceeds, went to the bank that held the mortgage. It is undisputed that Anderson never disclosed any of those specific facts to the government either during the October proffer meeting or thereafter. So while Murphy's appellate brief may not have been precisely drafted– he said Anderson "ailed to disclose any information concerning a mail fraud scheme that involved several arsons at a commercial property he owned"–it contained no false statements. And it was not, as Anderson would have us believe, "contrary to the position that the government took in the trial that Mr. Anderson had confessed to burning his property for the money." Burning the property for the insurance money and putting into motion a mail fraud scheme to collect that money are distinct crimes, and as the district court noted, AUSA Murphy's statement in the appellate brief would have virtually no tendency to undermine the government's evidence of Anderson's confession to the arson crimes.

We conclude that the district court was clearly correct in its rulings. Anderson's attempt to put Murphy's statement and testimony before the jury was in reality an attempt to undermine the veracity of his own confession–that is, he sought to impeach the FBI agent's statements contained in the FBI 302 Report, to which he did not object at trial. But as the district court aptly pointed out, Murphy was not even present at the October 26 meeting, and the statement in Murphy's appellate brief does not have any tendency to show

that Anderson did not confess to arranging to have the buildings burned.

Accordingly, we AFFIRM the judgment of the district court.